DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| NATHANIEL UNTALAN, | CIVIL CASE NO. 18-00015 |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** re Motion for Partial Summary Judgment |
| NISSAN MOTOR CORPORATION IN GUAM, | |
| Defendant. | |

On August 20, 2019, the court heard the Motion for Partial Summary Judgment filed by Nissan Motor Corporation in Guam (Defendant) against Nathaniel Untalan (Plaintiff).

At the conclusion of the hearing, the court took the motion under advisement.

After having reviewed the memoranda in support and in opposition to the motion and the reply thereto, the arguments by the parties, the court submits its decision in this Report and Recommendation.

**BACKGROUND**

Plaintiff was hired by Nissan in July, 1997 as a Warehouse Person. He continued in that capacity until 2007 when he was promoted to Assistant Parts Manager. As Assistant Parts Manager, he had the duty "of assisting the Parts Manager, readings emails, checking up on invoices, and following up on part orders and service repairs." Plaintiff alleges that in 2013, his hourly rate of employment with Nissan was $3.12 and remained at that rate throughout the period of his employment with Nissan.

In September, 2013, Plaintiff enlisted in the United States Air Force Reserve. Since his enlistment, Plaintiff alleges that he received negative comments from his employer and his

loyalty to the company was questioned as well as his character as a manager.  Eventually, he was forced to resign "due to issues regarding his 401k, health care, promotions, and an intolerable work environment that Nissan intentionally created" as a result of his enlistment.

On April 30, 2018, Plaintiff filed a two-count complaint against Defendant.   In his complaint, Plaintiff alleges that:

Count I.  Nissan violated his rights under Guam's Fair Labor Standards Act because it never paid him a base rate of no less than $8.25 when the said rate became effective on January 1, 2015.  He continued to receive a base rate of $3.12 per hour until his termination. Thus, Plaintiff alleges that he was never lawfully paid as an hourly employee or as a salaried employee and was exempt from the provisions of 22 G.C.A. § 3108.

Count II.  Nissan violated his rights under the Uniformed Services Employment and Reemployment Rights Act (USERRA) by: (A) Plaintiff's denial of promotion; (B) Plaintiff's Constructive Discharge; (C) Nissan's willful and reckless violation of the rules and regulations of employees pension benefit plans under USERRA; and (D) Nissan's failure to pay him health insurance premiums which were withheld from his regular wages and benefits.

**DISCUSSION**

Defendant has moved for partial summary judgment on three grounds.  In its motion, it argues that:

1. Nissan is entitled to summary judgment because there was no violation of Guam's Fair Labor Standards Act because Plaintiff was employed as a bona fide executive employee and paid on a salary of not less than $455 per week.

2. Nissan is entitled to partial summary judgment because it did not wilfully or recklessly withhold employer contributions into Plaintiff's 401K plan.

3. Nissan is entitled to summary judgment on the claim that Plaintiff is entitled to reimbursement for medical and dental premiums for the period of June 1, 2017 to July 31, 2017.

**Summary Judgment:  Violation of Guam's Fair Labor Standards Act.**

Defendant argues that the provisions of the Fair Labor Standards Act are inapplicable to Plaintiff since he was an executive employee of Defendant.  As a bona fide executive employee

of Defendant, Plaintiff was exempt from the requirements of Guam's Fair Labor Standard Act. In support thereof, Defendant cites 22 G.C.A. § 3108(b)(1), which provides:

> Any employee who is employed in a bona fide executive capacity, which is any employee who is compensated on a salary or fee basis at a rate of not less than Four Hundred Fifty-five Dollars ($455.00) per week and whose primary duty is management of the enterprise where the employee is employed or of a recognized department thereof; who customarily and regularly directs the work of two (2) or more other employees; and who has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

Under the statute, an employee is exempt under the Guam Fair labor Standard Act if (1) he is employed in a bona fide executive capacity earning a salary of not less that $455 per week and (2) is employed in a recognized department thereof; customarily and regularly directs the work of two or more other employees; has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

Thus, Defendant argues that Plaintiff was employed as a bona fide executive employee. In support thereof, Defendant advises the court that Plaintiff was an Assistant Parts Manager from 2007 until he resigned on September 7, 2017 earning the requisite salary under the statute. In addition, Defendant provides the court with Plaintiff's deposition testimony which illustrates his managerial duties.[1]  The relevant deposition parts provide:

> Q: In your own words, can you tell me exactly what your essential job duties were throughout the years that you held that job position.
> A: Process special orders, handle customers, of course, work on stock orders, oversaw most of my Parts Advisors, monitor sales, keep an eye on telephones.
> . . .
> Q: How many people or how many employees were in the Parts Department?
> A: We had approximately eight, ten.
> Q: And so you said there were parts advisors?
> A: Parts advisors.
> Q: And what other titles were there?
> A: Warehouse person.
> Q: Okay. Anything else?
> A: We had an inventory clerk off-island, an off-island inventory clerk.
> Q: Okay. And you said that you oversaw parts advisors --

---

[1] Excerpt pages from the May 30, 2019 Deposition Transcript of Plaintiff are appended to Defendant's Concise Statement beginning at page 75 of ECF No. 23.

| | |
|---|---|
| 1 | A: Yes, ma'am. |
| | Q: -- correct? Did you also oversee the warehouse person? |
| 2 | A: Yes. |
| | Q: And did you also oversee the inventory off-island clerk? |
| 3 | A: Yes. |
| | . . . |
| 4 | Q: Okay. Did you direct them with regard to their job duties, meaning did you tell them what to do or did you show them how to do things, things of that nature that an |
| 5 | assistant manager would do? |
| | A: Yes. |
| 6 | Q: "Yes," okay. Now, with regard to these individuals, did you have the authority to make any suggestions with regard to either promoting them or maybe |
| 7 | demoting them or maybe recommending them for certain raises or anything of that nature? |
| 8 | A: Officially or -- |
| | Q: In your capacity as an Assistant Parts Manager. |
| 9 | A: As a Manager, I can always take care of my people and talk to the Parts Manager or give him my opinion. |
| 10 | Q: And make those recommendations? |
| | A: If he asks for it. |
| 11 | Q: Okay. As an Assistant Parts Manager, do you feel that your opinion regarding how an individual was doing was given a certain amount of weight? |
| 12 | A: I would hope so. |
| 13 | Q: Have you had discussions [with the Parts Manager] before regarding promotions, demotions? |
| 14 | A: When he asks my opinion. |
| | Q: So he will defer to you? |
| 15 | A: He would ask, yes. |
| 16 | Q: One of the things that I wanted to also follow up on is when we were talking about your job duties and your job description, did that also include doing performance |
| 17 | reviews for your Parts Advisors or anyone that you oversaw in the Parts Department? |
| | A: Yes, Ma'am. |
| 18 | Q: So that was also part of your essential duties - - |
| | A: Yes. |
| 19 | Q: - - to do the performance reviews? |
| | A; We split it in half. It was me and the Manager. |
| 20 | Q: Oh, ok. |
| | A: He asked for help, so he would make me do four and then he would take the rest |
| 21 | at his discretion. |

Depo. Tr. Nathaniel B. Untalan, ECF No. 23 at 78-84.[2]

Based upon the foregoing, Defendant argues that Plaintiff was a bona fide executive employee of Defendant when he was so employed because he regularly supervised eight to ten individuals in the Parts Department; that his job description and managerial duties illustrated he

---

[2] For ease of reference, citations to excerpts of deposition transcripts shall refer to the page numbers printed on the ECF footer.

had a leadership position within Defendant's employment; and that he made recommendations as to hiring, firing, and promotions for the company.

Defendant next argues that Plaintiff was paid on a salary basis of not less than $455 per week.

Since Guam has no rules interpreting the statute, Defendant cites 29 CFR Part 541.600, the federal regulation interpreting the Federal Fair Labor and Standard Act, for guidance. The regulation provides:

> (a) To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities.
>
> (b) The $455 a week may be translated into equivalent amounts for periods longer than one week. The requirement will be met if the employee is compensated biweekly on a salary basis of $910, semimonthly on a salary basis of $985.83, or monthly on a salary basis of $1,971.66. However, the shortest period of payment that will meet this compensation requirement is one week.

Mr. Arnel Bonto, Nissan's Controller, testified that pursuant to the Fair Labor Standards Act, Plaintiff was considered an executive employee and was exempt from the minimum wage requirements. *See* Depo. Tr. Arnel Bonto, ECF No. 23 at 91. When asked about Plaintiff's pay structure, he indicated that Plaintiff's salary was comprised of his base pay plus commission and bonuses. *Id*. at 100-01. He added that Plaintiff received a minimum of $455 per week, *id*. at 91, and to ensure that Nissan complied with this weekly salary requirement, Mr. Bonto personally calculated Plaintiff's commissions, and then forwarded the commission calculation worksheet to Linda Nieva, Nissan's Chief Accountant, for review and processing into the payroll system. *Id*. at 89 and 92-93.

At $455 per week, Plaintiff should have earned a minimum of $23,660 per year. *Id.* at 93. During his deposition, Mr. Bonto reviewed Plaintiff's pay registers from 2007 to 2017 (*id*. at 94-99 and Exhibit K) and confirmed that during those years, he earned more than $23,660 per year, as evidenced below:

2007 $27,924.28    2013 $49,567.28

2008 $39,722.93    2014 $36,364.06

2009 $42,591.36    2015 $36,608.79

| | | | |
|---|---|---|---|
| 1 | 2010 $46,628.21 | 2016 $48,848.50 | |
| 2 | 2011 $44,242.11 | 2017 $29,846.99 | |
| 3 | 2012 $49,093.84 | | |

Based upon the above, Defendant has moved for summary judgment based upon the premise that Plaintiff is not covered under Guam's Fair Labor Standards Act.

Plaintiff has opposed the above motion.

In his opposition, *see* ECF No. 29, Plaintiff points out that his pay structure is calculated based upon a percentage of the adjusted gross profit plus a base pay. In June, 2008, he received notice that his revised pay plan would be based upon a 2% sales commission plus a $5,000 annual base pay. Furthermore, Plaintiff states that in 2011, he was notified that his base pay was increased to a new rate of $500 per month ($6,00 per year). *See* Opp'n at 2, ECF No. 29. Plaintiff also states that on July 18, 2017, he was notified by Defendant that his pay plan was calculated based upon 2% of adjusted gross profit plus a base pay of $6,500 per year or $270.84 per pay period. *Id.* at 6.

Citing 29 C.F.R. § 541.602(a), Plaintiff argues that the $455 per week salary threshold must be a fixed and predetermined amount rather than the "as long as he actually gets at least $455 each week ...and if he does not we will reimburse him shortly thereafter" policy which Nissan has adopted. It is Plaintiff's position that under federal and Guam law, fluctuating and uncertain commissions are not counted towards the $455 per week threshold. To meet said threshold amount, the $455 salary must be guaranteed. It must be a fixed and predetermined amount, and free and clear. Plaintiff contends that commissions do not qualify as fixed predetermined amounts that are paid free and clear because they are subject to variations based upon the quality or quantity of the work performed.

29 C.F.R. § 541.602(a) provides:

> (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, **a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed**. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for

any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

Has Nissan satisfied summary judgment standards? In determining whether Nissan is entitled to summary judgment, the court notes Nissan must show that Plaintiff's employment was truly as an executive performing functions as an executive employee under the company's umbrella and that he was paid the requisite salary provided under the statute.

Nissan argues that Plaintiff was an executive employee because he regularly supervised eight to ten individuals in the Parts Department; his job description and managerial duties illustrated he had a leadership position within Defendant's employment; and he made recommendations as to hiring, firing, and promotions for the company.

The court notes that federal regulations which interpret whether an employee functions as an executive employee have other guidelines which appear to require a fact finding by the trier of fact.

For example, in order to determine whether an employee suggestions and recommendations are given "particular weight", 29 C.F.R. § 541.105 provides:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

As further examples, federal regulations provide guidelines as to the general rules for administrative employees (29 C.F.R. § 541.200), whether an employee's work is directly related to management or general business operations (29 C.F.R. § 541.201), primary duty considerations (29 C.F.R. § 541.700), and concurrent duties (29 C.F.R. § 541.106).

Whether or not Plaintiff qualifies for work that is directly related the management or

general business of Defendant, 29 C.F.R. § 201 provides:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

An important factor in determining whether Plaintiff is an executive employee centers on the question of his primary job duty. 29 C.F.R. § 541.700 provides:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.
>
> (c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers

spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

As seen in the regulations above, whether or nor Plaintiff is a bona fide executive employee is a fact intensive process. His primary duty is based upon all of the facts in the case. See 29 C.F.R. § 541.700. Whether or not his suggestions or recommendations are given weight also requires more facts to be developed. *See* 29 C.F.R. § 541.105.

Thus, based upon all of the above, the court finds that summary judgment on the basis that Plaintiff is exempt from the application of the Fair Labor Standards Act because he is a bona fide executive employee of Nissan is inappropriate at this time. Summary judgment is appropriate when the facts are not in dispute. In this instance, Plaintiff disputes his salary computation as Nissan asserts that it is. Likewise, whether Plaintiff is indeed a bona fide executive employee is a factual determination that must be determined at trial based upon the aforesaid regulations and not at this stage of the proceedings.

**Summary Judgment that Nissan did not wilfully or recklessly withhold employer contributions into Plaintiff's 401K plan.**

Nissan argues that Plaintiff has not met his burden of showing that Nissan's failure to initially provide him with the correct employer contributions into his 401K plan was willful or in reckless disregard of its obligations. Nissan states that Plaintiff in the Complaint simply alleges that "Untalan's 401K benefits were withheld from the amount that he received in his pension plan" and that "Nissan willfully or recklessly violated the rules and regulations of employee pension benefit plans under USERRA." ECF No. 1. He then alleges in his deposition that in 2017, he raised this issue with E.J. Quintanilla, and when he was informed that he was not entitled to these benefits, he filed a Complaint with ESGR. Depo. Tr. Nathaniel B. Untalan, ECF No. 29 at 40. Nissan unequivocally states that when Plaintiff initially brought this issue to Mr. Quintanilla's attention, Mr. Quintanilla was under the good faith belief that Nissan had paid him the correct benefits and that Nissan was not violating any laws. It was only after speaking with the ESGR representative that Mr. Quintanilla was on notice that something could be awry. So,

he immediately sought clarification from Ms. Bamba at ASC Trust. She first provided him with information that confirmed his stance, but then after additional research, she contacted him approximately one week later and provided him with the correct information as it relates to military service members. Upon receipt of this information, Nissan's Controller immediately calculated the amount of employer contribution due and forwarded it to ASC Trust. Nissan concludes that based upon the court's holding in *Reed v. Honeywell Int'l. Inc.*, Nissan's initial error as to its compliance requirements and its consultation with ASC in an attempt to comply with USERRA is not evidence of willfulness.

In Opposition, Plaintiff argues that triable issues of fact remain as to whether Nissan's acts were wilful. Questions remain as to Nissan's intentions and motivations for allegedly violating Plaintiff's USERRA rights by withholding 401K contributions, failing to reinstate his health insurance immediately, and making "illegal" deductions from his salary.

Plaintiff points out that he met with Mr. Quintanilla in July, 2017 regarding his 401K account and filed his ESGR complaint at least by mid-July. Mr. Quintanilla did not do anything about the complaint until he contacted Gaby Bamba on August 30, 2017. Mr. Quintanilla states in his affidavit of June 12, 2019 (ECF No. 20-4) that on September 6, 2017, Ms. Bamba contacted him by email and advised him that she had failed to provide him with rules specific to military service members and USERRA. Ms. Bamba later provided him with the information and eventually Mr. Quintanilla provided the information to the company controller, who immediately calculated the amount due to Plaintiff for the past years when he was on military leave. A check in the amount of $1,467.39 was issued to ASC Trust. Mr. Quintanilla fails to state when the money was paid and what past year amounts they were for.

22 GCA § 3219 provides penalties for employers who fail to pay wages when due or who underpay employees, unless the employer can establish an affirmative defense. Damages are assessed as punitive damages which is equal to three times the wages due. Section 3219(a)(8) provides: "(8) In the case of an underpayment, the underpayment was a good faith effort error with no intent to defraud."

In this case, there has been an acknowledgment of an underpayment by Nissan in relation

to Plaintiff's 401K, where Nissan has admitted that it has now correctly calculated the amounts due him for past years he was on military leave. Nissan asserts that the underpayment for past years Plaintiff was on military leave was a good faith error with no intent to defraud. Plaintiff disputes Nissan's good faith assertions.

After having weighed the above contentions and the facts as represented therein, the court agrees with Plaintiff that there remain triable issues of facts to be determined whether Nissan's acts were made in good faith error and with no intent to defraud.

**Summary Judgment on the claim that Plaintiff is entitled to reimbursement for medical and dental premiums for the period of June 1, 2017 to July 31, 2017.**

With respect to this claim, Nissan asserts that it has now paid all medical and dental premiums to Plaintiff for the periods from June 1, 2017 to July 31, 2017 and can be granted summary judgment inasmuch as there are no amounts left to be paid.

It appears to the court that Plaintiff's position with respect to this issue is that assuming the reimbursements have indeed been all paid, there still remains the issue regarding penalties for a failure to pay which are subject to the affirmative defenses under 22 GCA § 3219.

With regard to this issue, the court agrees in part with Nissan that it should be entitled to summary judgment solely to the issue that there are no further reimbursements due to Plaintiff for medical and dental premiums for the period from June 1, 2017 to July 31, 2017. However, the court also agrees with Plaintiff that there still remains the issue whether Nissan is subject to the penalties provided for under 22 GCA § 3219 for the failure to pay when due the amounts therein. Such an inquiry is appropriate for trial and is thus inappropriate for summary judgment.

///
///
///
///
///
///
///

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an order as follows:

That the motion for partial summary judgment be denied except as to the claim **that Plaintiff is not entitled to any further reimbursement for medical and dental premiums for the period of June 1, 2017 to July 31, 2017.**

IT IS SO RECOMMENDED.



/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Oct 11, 2019

## NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**